# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CLAIRE WALKER,

    Plaintiff,

v.

CAIDAN MANAGEMENT
COMPANY, LLC,

    Defendant.

_____/

Case No. 15-11465

HON. DENISE PAGE HOOD

## ORDER REGARDING MOTIONS IN LIMINE

Plaintiff filed this action on April 22, 2015, alleging that Defendant discriminated and retaliated against her on the basis of her race and disability, in violation of Title VII, the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), and the Michigan Persons with Disabilities Civil Rights Act ("MPWDCRA"). On September 11, 2017, the Court entered an Order granting in part and denying in part Defendant's Motion for Summary Judgment [Dkt. No. 54]. Plaintiff's race discrimination claims under Title VII and ELCRA were dismissed, but Plaintiff's claims pursuant to the ADA, MPWDCRA, and FMLA remain pending.

The parties have filed nine motions titled Motion in Limine, four by Defendant

1

(to which a response but not a reply has been filed for each motion) and five by Plaintiff (to which a response and a reply have been filed for each motion). The nine motions in limine are addressed below. The Court incorporates by reference its findings and conclusions set forth in the September 11, 2017 Order.

**A.   Docket No. 55**

Defendant moves the Court for an order precluding Plaintiff from introducing evidence of damages "beyond lost wages and to preclude evidence related to any attempts to mitigate damages." Defendant argues that Plaintiff failed to itemize her damages until one day before the joint pretrial order was due, prejudicing Defendant's ability to assess the damages and refute them. Defendant relies on Rule 26(a)(1)(A)(iii), (e)(1) and (2) and (a)(1)(E).

The Court denies Defendant's motion. First, although Defendant does not appear to challenge damages related to lost wages, the lost wages and bonuses are information known to Defendant because they are based on the amounts Plaintiff was paid while working for Defendant. The parties have stipulated to exhibits that include Plaintiff's salary, bonuses, and wages for the last years of her employment by Defendant. Second, damages for emotional distress and punitive damages are not objectively calculable, so there was no need for Defendant to itemize those amounts for Defendant during discovery. Third, liquidated damages are determined by a

formula that is put in motion after a jury's determination of damages, so there was no need to calculate that amount during discovery. Fourth, the Court, not the jury, determines interest, and attorney fees and costs, if necessary.

Although Defendant suggests that Plaintiff did not provide evidence of her mitigation efforts, the record reflects that Plaintiff testified at her deposition about making job applications and furthering her education. Dkt. No. 75, Ex. A at 14-16, 51-53, 69-70. And, the record reflects that, by the time Defendant filed its motion, Plaintiff had provided Defendant with documentation evidencing her job search testimony. Dkt. No. 55 at 9.

The Court finds that Defendant has good reason to challenge Plaintiff's delayed production of documents that supported her job search testimony. Those documents were produced: (1) only after numerous requests (including at least six times during the 10 month period after Plaintiff testified about her job search); and (2) on the eve of the filing of the joint pretrial order. It does strain the limits of credulity that Plaintiff could not find the documents for nearly 11 months after expressly being asked at her deposition to provide them, yet she could find them the day before the joint pretrial order was due. Despite Plaintiff's delayed production, the Court finds that Defendant has not been unfairly prejudiced by Plaintiff's production of those documents. The documents merely evidence the job search efforts Plaintiff described

at her deposition, and they are not documents that require taking depositions or requesting further information. In addition, the trial in this matter was still over three months away when Defendant received the documents at issue. As Plaintiff states, "[i]f Defendant wants to cross-examine Plaintiff about why she did not find them previously, it can[.]"

The Court denies Defendant's motion to preclude Plaintiff from introducing evidence of damages "beyond lost wages and to preclude evidence related to any attempts to mitigate damages."

**B.     Docket No. 56**

Defendant requests that the Court preclude Plaintiff from introducing testimony and evidence regarding the August 29, 2013 Performance Improvement Plan ("PIP"). Defendant argues the PIP is irrelevant because Defendant determined the PIP was: (a) not the appropriate course of action at that time; (b) never provided to Plaintiff; and (c) was not the basis for any adverse action against Plaintiff. Defendant suggests that, if the PIP is relevant, evidence regarding the PIP should be excluded as its probative value is substantially outweighed by the danger of unfair prejudice.

The Court does not agree with Defendant's positions. The Court finds that the PIP is relevant because it may be probative of Defendant's treatment of Plaintiff with respect to taking FMLA leave, including a manner in which Defendant contemplated

disciplining her for taking leave. The Court concludes that, although the introduction of such evidence may not be favorable to Defendant, its introduction would not be unfairly prejudicial to Defendant. Most significantly, it is a document produced by Defendant, and Plaintiff may rely upon it at trial.

Defendant's motion to preclude evidence of the PIP is denied.

**C.      Docket No. 57**

Defendant moves to preclude the introduction of – or attempts to introduce – any evidence of purported FMLA violations occurring prior to March 2014. Defendant contends that Plaintiff never alleged any pre-March 2014 FMLA violations in her complaint or during the course of discovery and that Plaintiff's FMLA claim is limited to her termination. Defendant states that the first time pre-March 2014 FMLA violations were introduced was in Plaintiff's response brief to Defendant's summary judgment motion. Defendant focuses on Plaintiff's deposition testimony, specifically when she answered "Yes" to the question: "Okay. Correct me if I'm wrong, but your claim for violation of the Family Medical Leave Act is that you were told by someone at [Defendant] that . . . you had eligibility under FMLA and that during the time you were getting the paperwork filled out, you were improperly terminated; is that correct?"

The Court denies Defendant's motion for two reasons. First, Defendant's

5

motion is an attempt to have the Court make a determination that is dispositive as to Plaintiff's FMLA claim. The dispositive motion cut-off was February 28, 2017, eight months prior to the filing of this motion. Second, just as Defendant did when briefing its summary judgment motion, Defendant ignores several allegations in Plaintiff's Amended Complaint. *See* Dkt. No. 15, Paragraph ¶¶ 17, 22-23, 25, 36, 42, 43, 45, 48, 53, 57. *See also* Dkt. No. 54, PgID 1228-30 (emphasis added), where the Court stated:

> Plaintiff alleges that Defendant's Motion does not address her claims that Defendant violated her rights under the FMLA on numerous occasions:
>
> (1) April 13, 2012 – Defendant required a second opinion about Plaintiff's asthma, in violation of 29 CFR § 825.307.
>
> (2) May 2013 – Defendant refused to allow Plaintiff to return to her position, refused to give her training in the Inpatient Review Nurse position, gave her higher goals to obtain than others who had not taken FMLA leave, made the goals impossible to achieve by failing to give her the work and equipment necessary to achieve her goals, subjected her to increased scrutiny and falsely reported her goals to create an appearance of poor performance. Citing 29 C.F.R. § 825.214; *Arban, supra*; [Dkt. No. 47, Ex. O, R, T, U, X, Y]
>
> (3) August 2013 – Defendant interfered with Plaintiff's FMLA rights by requiring Plaintiff to call in every day of her leave and considered firing her despite having prior notice of the leave. Citing Dkt. No. 47, Ex. W and 29 C.F.R. § 825.311.
>
> (4) August 29, 2013 – While Plaintiff was on FMLA leave, Defendant planned to discipline Plaintiff, in part, for her attendance while on FMLA leave, because while she was on leave, her work did not get done. Citing Dkt. No. 47, Ex. V and *Skrjanc, supra; Arban, supra*.
>
> (5) September 2013 – Defendant failed to inform Plaintiff of how

6

many FMLA hours she had left/had used before Plaintiff exhausted her FMLA hours. Defendant waited for almost two weeks after it claimed her leave had been exhausted to inform Plaintiff that she had exhausted her leave. Dkt. No. 47, Exhibit AA; 29 C.F.R. § 825.300(d)(6); 29 C.F.R. § 825.300(e). During that time, Defendant cancelled her health insurance on the premise that she was no longer a full-time employee (which Plaintiff states was not true).

(6) March 2014 – Defendant failed to notify Plaintiff of her eligibility to take FMLA leave within five business days, 29 C.F.R. § 825.300(b)(1), and gave her a poor performance review warning on the day she started FMLA leave, even though it did not give her enough work, gave her higher standards, and did not train her. Citing Dkt. No. 47, Ex. C at 56-60, 70-72, Ex. FF.

**The Court agrees with Plaintiff with respect to her FMLA claims based on events prior to March 2014, as Defendant does not specifically address any of them.** Accordingly, Defendant is not entitled to summary judgment with respect to any of the pre-March 2014 FMLA interference claims.

Based on the parties' submissions in this case (including without limitation the Amended Complaint, deposition testimony, and interrogatory answers) and subject to any express limitation set forth in this Order or in the future, the Court concludes that Plaintiff may introduce evidence regarding alleged pre-March 2014 FMLA violations. Defendant's motion to preclude evidence regarding alleged pre-March 2014 FMLA violations is denied.

**D.    Docket No. 58**

Defendant asks the Court to preclude Deborah Armour from testifying about job classifications and employment practices of other health plans. Ms. Armour is a

7

former employee of Defendant who, at the time of her departure from Defendant, worked as a Care Coordination Team Lead ("Team Lead"), the same supervisory position held by Plaintiff prior to Plaintiff's reassignment to a Utilization Management ("UM") Review Nurse in or about May 2013. Ms. Armour now works for Blue Cross Blue Shield ("BCBS"), and she works from home in a position she states is "similar" to the Team Lead position. Defendant argues that any testimony Ms. Armour might try to offer regarding BCBS job classifications and employment practices is not relevant. Defendant also contends that Ms. Armour's position at BCBS is non-management, whereas she had management responsibilities as a Team Lead for Defendant.

Plaintiff first states that Ms. Armour's testimony is relevant because she is someone who "did the same job as Plaintiff" and is able to testify to how much of the job was telephonic and whether Plaintiff could do all of the parts of her job telephonically or through the computer. The Court notes, however, that Defendant does not argue that Ms. Armour cannot testify about her experience while working for Defendant. The Court concludes that Ms. Armour may testify about her experience while working for Defendant because such testimony is relevant and admissible.

Plaintiff then argues that the "fact that [Ms. Armour] is now i[n] the substantially similar position with Blue Cross Blue Shield is also very relevant to

whether Defendant violated the law by refusing to accommodate Plaintiff as requested." Plaintiff suggests that, because Ms. Armour does the "similar job remotely" for BCBS, she should be able to testify that a person can perform as a Team Lead while working from home. In reviewing the materials submitted, the Court cannot determine that Ms. Armour does the "similar job remotely" for BCBS. In the absence of evidence that Ms. Armour performs the <u>same</u> job remotely for BCBS that she did as a Team Lead for Defendant, any testimony about the comparability of her current position and the Team Lead position is not relevant on the issue of accommodation and would be unfairly prejudicial to Defendant.

The Court grants Defendant's motion to preclude Deborah Armour from testifying about job classifications and employment practices of other health plans. In the event that Plaintiff can demonstrate to the Court that Ms. Armour performs the same job remotely for BCBS as she did as a Team Lead for Defendant, Plaintiff may revisit this issue with the Court prior to the commencement of trial.

**E.     Docket No. 61**

Plaintiff asks the Court to exclude any evidence that Plaintiff left her deposition and went to her doctor's office because the court reporter wore Dolce & Gabbana. Plaintiff argues that this evidence is irrelevant and prejudicial. In support of her argument, Plaintiff identifies and purports to rely on Federal Rules of Civil

Procedure 16, 26, 30, and 37, as well as Federal Rules of Evidence 401-403. Plaintiff does not explain how any of those Rules bear on her motion, other than indicating that Federal Rules of Evidence 401 – 403 support a finding that such evidence is irrelevant and prejudicial. The Court disagrees.

The fact that Plaintiff had to walk out of her deposition because a court reporter was wearing perfume that triggered Plaintiff's asthmatic condition – and the fact that Plaintiff obtained a doctor's note regarding that incident and treatment for it – is relevant to her claims. Those events may be probative of: Plaintiff's medical condition, her ability to obtain employment then and now, and the level of accommodation that would be required for Defendant (or any other employer). Those events also may bear on the amount of damages awarded to Plaintiff, if any, and several other issues not discussed by the parties. The Court finds that Plaintiff's aborted deposition and the visit to her doctor are not unfairly prejudicial. In fact, Plaintiff has only argued that such evidence would be prejudicial, which is not sufficient for purposes of Federal Rule of Evidence 403 ("The court may exclude relevant evidence if its probative value is <u>substantially outweighed</u> by a danger of one or more of the following: <u>unfair prejudice</u> . . .").

The Court denies Plaintiff's motion to exclude: (1) evidence that she walked out of her deposition because of the scent worn by the court reporter; and (2) the doctor's

note she obtained when she left the deposition to visit her doctor.

Plaintiff also asks the Court to sustain Plaintiff's attorney's objections to the form and foundation of Defendant's questions when Plaintiff was deposed, stating that Defendant's questions were overly broad, vague and ambiguous. Plaintiff does not identify any specific questions, apparently asking the Court to globally sustain all such objections it made. The Court declines to do so. Plaintiff's request is overbroad, and there are no specific questions at issue. Plaintiff has not demonstrated how each (or any) of the questions to which her attorney objected during her deposition will be relevant at trial. The Court denies Plaintiff's "motion" to sustain all of her attorney's objections made during her deposition.

**F.  Docket No. 63**

Plaintiff moves the Court to hold that Defendant is estopped from: (1) arguing that Plaintiff was not terminated on April 2, 2014; and (2) asserting as a defense Plaintiff's failure to submit a medical certification by April 5, 2014. Plaintiff relies on a voicemail message for Plaintiff left by Defendant's employee on April 2, 2014. In that message, Defendant's employee stated: "if you do not return to work or flex these hours, we will consider this job abandonment and termination will be processed immediately" (*see* Dkt. No. 43, Ex. 11; Dkt. No. 63, Ex. A). Plaintiff also relies on Defendant's legal counsel's email of April 1, 2014, wherein he stated, "If she has

11

exhausted all leave that is available[,] then we should process this as job abandonment."). Dkt. No. 63, Ex. B (PgID 1483). Plaintiff claims that she relied on the April 2, 2014 voicemail in failing to submit her medical certificate by April 5, 2014. Plaintiff argues that, because of her reasonable reliance on Defendant's misrepresentation, Plaintiff did not turn in a medical certificate by April 5, 2014 and suffered a resulting detriment (termination). *Tilley v. Kalamazoo Cty. Rd. Comm'n*, 777 F.3d 303, 311 (6th Cir. 2015). Plaintiff notes that the termination letter dated April 9, 2014 states that the termination date was April 2, 2014. Plaintiff also argues that Defendant failed to notify her of the consequences of failing to provide a timely medical certification, in violation of 29 C.F.R. § 825.305(d).

Defendant argues that Plaintiff's motion does not present an evidentiary issue. Defendant asserts that the motion is, in essence, a summary judgment motion masked as a motion in limine. Citing *Williams v. Johnson*, 747 F.Supp.2d 10, 14 (D.D.C. 2010) ("In light of their limited purpose, motions in *limine* should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards."). Defendant argues that, to the extent Plaintiff is arguing that Defendant failed to include the consequences for failure to submit medical certification, Plaintiff missed the dispositive motion deadline regarding that issue.

12

The Court agrees that Plaintiff's motion should have been filed prior to the dispositive motion cut-off. Plaintiff is not asking the Court for an evidentiary ruling. Plaintiff is asking the Court to make a factual determination as to whether Defendant complied with the law when Defendant allegedly did not notify her of the consequences of failing to timely file her medical certification.

Defendant asserts that, even if Plaintiff's motion presents an evidentiary issue, the Court has already held that there is a question of fact as to when Plaintiff was terminated. By a letter dated March 20, 2014, directing her to submit the completed medical certification within 15 calendar days, Plaintiff was notified that she had to complete the medical certification by April 5, 2014. Dkt. No. 43, Ex. 10. Defendant states that she was terminated on April 9, 2014 for job abandonment when she had not submitted the completed medical certification (even though Plaintiff had been notified of the need to submit it when the voicemail message was left for her on April 2, 2014, *see* Dkt. No. 43, Ex. 11; Dkt. No. 63, Ex. A) and did not return to work. The Court finds that there is no unequivocal, undisputed evidence that Defendant notified Plaintiff before April 5, 2014 that Plaintiff was terminated. And, as the Court noted in the September 11, 2017 Order, there is a genuine dispute of material fact regarding Plaintiff's termination date. *See, e.g.,* Dkt. No. 54, PgID 1231-32.

The Court denies Plaintiff's motion to estop Defendant from: (1) arguing that

Plaintiff was not terminated on April 2, 2014; and (2) using as a defense Plaintiff's failure to submit a medical certification by April 5, 2014.

## G. Docket No. 64

Plaintiff asks the Court to find that Defendant committed a number of FMLA violations, including: (a) telling her she was being terminated on April 2, 2014 for not having any FMLA time left (even though she did); (b) requiring her to get a second opinion, even though Defendant did not put in writing that her FMLA paperwork was not sufficient; (c) obtaining information prohibited by the FMLA statute; (d) failing to advise her of the consequences of not turning in an adequate medical certification; (e) failing to notify Plaintiff of her FMLA eligibility within 5 business days; and (f) interfering with her ability to take leave by failing to notify her in writing of the number of hours, days or weeks it was counting against her leave entitlement until after her leave was exhausted.

As Defendant argues, Plaintiff's motion constitutes a motion for summary judgment. Plaintiff asks the Court to make factual determinations, as a matter of law, regarding a number of FMLA provisions that Plaintiff has alleged Defendant violated. If the Court were to make the findings sought by Plaintiff, the Court's rulings would be dispositive on her FMLA claim. As the deadline for filing dispositive motions was February 28, 2017, Plaintiff's motion is denied.

**H.     Docket No. 65**

Plaintiff moves the Court to prohibit Defendant from offering a mitigation defense. Plaintiff argues that Defendant has the burden of proving a failure to mitigate, which it can satisfy "only by establishing that there were substantially equivalent positions available and that the plaintiff did not use reasonable care and diligence in seeking such positions." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 557 (6th Cir. 2006). Plaintiff asserts that Defendant has not listed any mitigation expert who can testify that equivalent jobs were available or that Plaintiff "did not use reasonable care and diligence in seeking . . . available positions."

Defendant argues that, despite at least six requests between December 2016 and May 30, 2017, Plaintiff did not produce any evidence of her damages or attempts to mitigate damages during the course of discovery. Plaintiff only filed documentation of her job searches in late October 2017, on the eve of the joint pretrial order being filed.

As discussed above, (1) the economic damages in this case are based on Plaintiff's salary and bonuses while employed by Defendant; (2) Plaintiff testified at her deposition that she applied for jobs and about her academic endeavors; (3) it is true that Plaintiff did not produce documentation of her job searches until the eve of the joint pretrial order being filed; and (4) the Court has ruled that Plaintiff can seek

15

to introduce the documentation of her job search efforts. For all of those reasons, most significantly that Plaintiff did not produce documentation of her job searches until long after the discovery closed, the Court concludes that Defendant should not be prohibited from arguing that Plaintiff's mitigation efforts were not reasonable. Plaintiff's motion to prohibit Defendant from offering a mitigation defense is denied.

## J.[1]    Docket No. 66

Plaintiff asks the Court to clarify whether liquidated damages and/or attorney fees will be decided by the Court rather than the jury. Plaintiff cites 29 U.S.C. § 2617 and *Arban v. West Publ'g Corp.*, 345 F.3d 390 (6th Cir. 2003), for the proposition that such matters are usually determined by the Court, not a jury. Defendant does not address the merits of the issue. Instead, Defendant dismisses Plaintiff's motion as: (a) ill-conceived because it does not request a pre-trial evidentiary ruling; (b) premature because it is to be dealt with at the "pre-trial jury instruction phase;" and (c) unwarranted because Defendant denies having violated the FMLA.

The Court finds that Plaintiff's motion warrants consideration at this time, particularly as Plaintiff seeks a ruling on whether evidence regarding liquidated damages, attorney fees, witness fees, and costs may be introduced at the jury trial.

---

[1] In order to prevent confusion of Roman numerals and the capital letters captioning each motion in limine, the Court skipped from "H." to "J."

Section 2617(a)(1)(A) provides that an employer shall be liable to an affected eligible employee for (i) actual monetary losses, (ii) interest on those monetary losses, and:

> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who violated section 2615 of this title proves to <u>the satisfaction of the court</u> that the act or omission . . . was in good faith . . . , <u>such court may, in the discretion of the court</u>, reduce the amount of liability to the amount and interest determined under clauses (i) and (ii), respectively, and . . .

(emphasis added). *See also Arban*, 345 F.3d at 408 (emphasis added) ("a <u>district court</u> may not exercise its discretionary authority to reduce or eliminate a liquidated damages award . . ." and "<u>we review a district court's decision</u> on liquidated damages for abuse of discretion"); *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1016 (9th Cir. 2010) (remanding case "to the district court for an explanation, and findings if appropriate, supporting the denial of the [liquidated damages] award").

Section 2617(a)(3) provides:

> <u>The court</u> in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

(emphasis added).

The Court does not find that there is any absence of clarity regarding liquidated damages, reasonable attorney's fees, reasonable expert witness fees, and other costs of the action – all of those items are for the Court, not a jury, to determine. The Court

17

makes a decision regarding liquidated damages (and fees and costs) only if a jury finds Defendant has violated Plaintiff's FMLA rights. If the jury makes such a finding, the Court's decision regarding the propriety of awarding or denying liquidated damages (*i.e.*, whether Defendant establishes that it acted in good faith and reasonably believed it was not violating Section 2615), will be based on evidence presented at trial. There will not be a separate proceeding where evidence will be admitted regarding the issue of liquidated damages (or any of the other possible fees and costs noted above). And, if a jury determines Defendant has violated Plaintiff's FMLA rights, the parties may make post-jury verdict arguments (orally and/or in writing, at the Court's discretion) whether liquidated damages and the other fees and costs are warranted. By statute, the liquidated damages, if awarded, would equal the amount awarded by the jury pursuant to Section 2617(a)(1)(A)(i) and (ii), but the reasonableness of the other fees and costs would have to be determined by the Court.

The Court grants Plaintiff's motion.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that:

A. Defendant's motion in limine to preclude Plaintiff from introducing

evidence of damages "beyond lost wages and to preclude evidence related to any attempts to mitigate damages" [Dkt. No. 55] is DENIED.

B. Defendant's motion in limine to preclude Plaintiff from introducing testimony and evidence regarding the August 29, 2013 Performance Improvement Plan ("PIP") [Dkt. No. 56] is DENIED.

C. Defendant's motion in limine to preclude the introduction – or attempts to introduce – any evidence of purported FMLA violations occurring prior to March 2014 [Dkt. No. 57] is DENIED.

D. Defendant's motion in limine to preclude Deborah Armour from testifying about job classifications and employment practices of other health plans [Dkt. No. 58] is GRANTED.

E. Plaintiff's motion in limine to exclude any evidence that Plaintiff left her deposition and went to her doctor's office and to sustain all of her attorney's objections made during her deposition [Dkt. No. 61] is DENIED.

F. Plaintiff's motion in limine to estop Defendant from: (1) arguing that Plaintiff was not terminated on April 2, 2014; and (2) use as a defense Plaintiff's failure to submit a medical certification by April 5, 2014 [Dkt. No. 63] is DENIED.

G. Plaintiff's motion in limine to find that Defendant committed a number of FMLA violations [Dkt. No. 64] is DENIED.

H. Plaintiff's motion in limine to prohibit Defendant from offering a mitigation defense [Dkt. No. 65] is DENIED.

J. Plaintiff's motion in limine to clarify whether liquidated damages, witness fees, attorney fees, and costs will be decided by the Court rather than the jury [Dkt. No. 66] is GRANTED.

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: January 16, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 16, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager